UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAMELA A. AHMED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-00190-KD-N |
| | ) | |
| v. | ) | Judge: Kristi K. DuBose |
| | ) | |
| JOHNSON & JOHNSON | ) | |
| HEALTHCARE SYSTEMS, INC.; | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING MR. EDWARDS' PERSONAL HIP IMPLANT EXPERIENCE

At his deposition, plaintiff's expert, Mr. Edwards, testified about his personal experience being implanted with artificial hip implants. According to his testimony, Mr. Edwards has "an artificial hip that's 19 years old and another one that's 13 years old. So this case is making me wonder when is it going to go and --." (Dep. of Richard Edwards ("Edwards Dep.") 76:17-20, Aug. 24, 2023 (Ex. 1); *see also id.* 82:17-19 ("I have a 19-year-old hip with a modular design. So it's good enough for me.").) Defendant, Medical Device Business Services, Inc. ("DePuy"), moves the Court to enter an order barring Mr. Edwards from testifying about the artificial hip implants he received (including their performance) because such testimony is irrelevant and prejudicial and would serve only to confuse the jury.

***First***, evidence related to Mr. Edwards' hip implants is entirely irrelevant. The performance of Mr. Edwards' hip implants, including how long they have lasted, is not probative of whether Ms. Ahmed's hip implant was unmerchantable. This is all the more true because Mr. Edwards could not even recall the manufacturers or models of his implants; he could only recall that one

was "titanium" and the other was "cobalt-chrome alloy." (Edwards Dep. 76:21-77:8; *see also id.* 120:13-14 ("I think I might have UHMW in my hip, my left hip.").)

**Second**, any supposed relevance of Mr. Edwards' personal experience with his hip implants would be substantially outweighed by the danger of unfair prejudice and jury confusion under Rule 403. If Mr. Edwards is permitted to offer testimony concerning his personal implant experience, and, in particular, the longevity of his implants, there is a significant risk that the jury may assume that the absence of complications for Mr. Edwards' hips necessarily implies that Ms. Ahmed's liner was defective. This would be particularly unfair given the vagueness of Mr. Edwards' recollections of his personal experiences. Moreover, defendants would have no choice but to cross-examine Mr. Edwards about the facts and circumstances of these other devices, resulting in an unnecessary mini-trial that delays the trial and confuses the jury. For this reason, too, such evidence should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should exclude evidence regarding Mr. Edwards' personal experiences with his hip implants.

Respectfully submitted this 3rd day of May, 2024.

/s/ Joseph P. H. Babington
JOSEPH P. H. BABINGTON
HELMSING, LEACH, HERLONG,
  NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, Alabama  36652
Telephone: (251) 432-5521
Email:  jpb@helmsinglaw.com

*/s/ Terri L. Bruksch*
TERRI L. BRUKSCH (admitted pro hac vice)
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 231-7246
Email: terri.bruksch@btlaw.com


*/s/ S. Eric Rumanek*
S. ERIC RUMANEK (admitted pro hac vice)
Georgia Bar No. 558047
TROUTMAN PEPPER HAMILTON
    SANDERS LLP
Bank of America Plaza
600 Peachtree St., N.E., Suite 3000
Atlanta, Georgia 30308
Telephone: 404-885-3000
Email: eric.rumanek@troutman.com

*ATTORNEYS FOR DEFENDANT*


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2024, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to those registered for this case on the CM/ECF system.

*/s/ Joseph P. H. Babington*
OF COUNSEL


4881-8656-0699, v. 1

# EXHIBIT 1

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF ALABAMA

3                    SOUTHERN DIVISION

4

5    PAMELA A. AHMED,

          Plaintiff,

6

7    v.                CASE NO. 1:22-cv-00190

8

9    JOHNSON & JOHNSON

     HEALTHCARE SYSTEMS, INC.;

10   et al.,

          Defendants.

11

12

13            VIDEOTAPED DEPOSITION OF:

14                 RICHARD EDWARDS

15

16          S T I P U L A T I O N S

17          IT IS STIPULATED AND AGREED, by and

18   between the parties through their respective

19   counsel, that the deposition of:

20                 RICHARD EDWARDS

21   may be taken before Lisa Bailey, Notary Public,

22   State at Large, at Baker Donelson, 1901 6th Avenue

23   North, Suite 2600, Birmingham, Alabama 35203, on

24   August 24, 2023 commencing at approximately

25   9:05 a.m.

1  authoritative.  So what source --

2          MR. RICHARDSON:  Let him answer.  He

3      told you he had some thoughts about it.

4      A.    Do I consider anything authoritative?  I

5  haven't seen anything that I would call

6  authoritative.  I think the registry is an attempt

7  to establish the actual facts of revision rate, and

8  I think -- I don't think the reporting is complete

9  enough to be completely confident in the -- some of

10  those opinions.  So revision rate, no, I mean,

11  that's something -- if I wanted to find out that

12  number, I'd be looking at National Institutes of

13  Health to see if they have a standard or

14  recommendation or byline or I'd go talk to my

15  friends who do orthopedic work.  And I have two

16  artificial hips and an artificial shoulder.  So I

17  have my own interest.  Now, I have an artificial

18  hip that's 19 years old and another one that's 13

19  years old.  So this case is making me wonder when

20  is it going to go and --

21      Q.    Do you know what type you have, type of

22  components?

23      A.    One was 2003, 2004, so the -- I don't

24  think that would be a DePuy.  But it is titanium.

25  Dr. White put it in at Brookwood Medical Center.

Page 77

1      Q.    What's his first name?  Do you know?

2      A.    No.  He's retired now.  He's probably

3   dead now.  And Dr. Smith is still active, and he's

4   at Alabama Orthopedics.  He doesn't do hips

5   anymore.  He does back surgeries now.

6      Q.    But he put in your second hip?

7      A.    He put in the second hip, but it was

8   cobalt-chrome alloy.  So I thought these are

9   titanium mostly.  I don't know if they make this

10  particular implant in cobalt-chrome or not.  If I

11  remember, he really didn't give me a choice.  It's

12  going to be cobalt-chrome.  And that's an issue

13  with me because I'm allergic to nickel, high nickel

14  alloys.  So I always get into that.  And being a

15  metallurgist, the doctors and I have a pretty

16  prolonged conversation about the materials that go

17  into the femur.

18     Q.    Getting back to my question.  Other than

19  looking at registry data, are you aware of any

20  other source that you consider to be authoritative

21  regarding total hip survivability or revision

22  rates?

23     A.    No, I don't know of --

24     Q.    Do you know what the acronym NICE,

25  N-I-C-E, all caps, stand for?

Page 82

1          Q.    Okay.  You don't remember.  Were you

2    working for the defense or for the plaintiff on

3    those cases?

4          A.    The -- I believe the defense.

5          Q.    What was your opinion in those cases, if

6    you remember?

7          A.    That the fatigue did, in fact, happen,

8    that it originated at the point of highest stress.

9    And we were asked to come up with ways to improve

10   the product.  That included compression, shock

11   blasting, different processing of the casting

12   during production and actually ion nitriding was

13   suggested.

14              Now, none of that -- some of that really

15   helped.  But none of it worked well enough.  The

16   modular design seems to have taken care of that

17   problem as opposed -- you know, I have a

18   19-year-old hip with a modular design.  So it's

19   good enough for me.

20         Q.    So this was a nonmodular femoral stem?

21         A.    Correct.

22         Q.    Have you ever been -- well, in this

23   case, the stem cases, those two cases, were you

24   tendered to a court as qualified to offer an

25   opinion regarding the devices?

1     Q.    Do you know what stage of the process

2  it's crosslinked or radiated?

3     A.    It's post-molding radiation.

4     Q.    And do you -- have you done any analysis

5  of the specific properties of this polyethylene?

6     A.    No, because I -- no, nondestructive, so

7  I've done what I can.

8     Q.    Do you know what the specific

9  polyethylene was chosen here versus some other

10  polyethylene mix?

11     A.    No.  There's -- you know, as far as I

12  know about the history, I know there was Marathon.

13  There was UHMW.  In fact, I think I might have UHMW

14  in my hip, my left hip.  And there's no definitive

15  delineation between the Marathon and the AltrX

16  liner.  I just know they're two different liners,

17  so, no, I don't know the chemistry.

18          I mean, I could make some educated

19  guesses based on the spectra.  I know there's a

20  hydroxyl group in there.  Where is it --

21     Q.    Well, if you don't know, we don't need

22  to go through it.  I just was asking you whether

23  you did not know.

24     A.    I know what's in my work.

25     Q.    So it's Exhibit 7.